2001 WY 55

**Randy EKLUND, Appellant (Plaintiff),**

v.

**PRI ENVIRONMENTAL, INC., a Wyoming corporation, Appellee (Defendant).**

**Farmers Insurance Exchange, Appellant (Defendant in Intervention),**

v.

**PRI Environmental, Inc., a Wyoming corporation, Appellee (Defendant).**

Nos. 00–51, 00–52.

Supreme Court of Wyoming.

June 14, 2001.

512

Les Bowron of Beech Street Law Office, Casper, WY, Representing Appellant Randy Eklund. Argument by Mr. Bowron.

Brett Marshall Godfrey of Godfrey & Associates, PC, Cheyenne, WY, Representing Appellee. Argument by Mr. Godfrey.

James D. Bramer and Blair J. Trautwein of Wick Campbell Bramer Ukasick & Trautwein, LLC, Fort Collins, CO, Representing Appellant Farmers Insurance Exchange. Argument by Mr. Trautwein.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

[¶ 1]   Randy Eklund (Eklund) was injured when the vehicle in which he was a passenger was rear-ended by a vehicle driven by a co-worker, Terry Tebben (Tebben).   The district court concluded that the co-worker was not acting within the scope of his employment at the time of the accident and granted the employer's, PRI Environmental, Inc.'s (PRI), motion for summary judgment on Eklund's claim of vicarious liability on the theory of *respondeat superior*.   Eklund also contends that a prior settlement entered into between PRI and the driver of Eklund's vehicle constituted collateral estoppel on the issue of whether the co-worker was acting within the scope of his employment.   Eklund appeals the grant of PRI's motion for summary judgment and the district court's refusal to apply the doctrine of issue preclusion to the question of Tebben's employment status. We affirm.

[¶ 2]   Eklund presents the following statement of the issues:

1.   The District Court committed reversible error by granting Defendant, PRI Environmental, summary judgment in the face of clearly defined genuine issues of material fact on the issue of Defendant Tebben's employment status at the time of the accident.

2.   The District Court committed reversible error by granting Defendant, PRI Environmental, summary judgment when Plaintiff's own Motion for Partial Summary Judgment demonstrated that PRI was barred and should have been estopped, as a matter of law, from relitigating the issue of Defendant Tebben's employment status at the time of the accident.

Intervenor/Appellant Farmers Insurance Exchange addresses only one of the issues:

Did the trial court err in granting summary judgment to defendant PRI Environmental, Inc. on the issue of *respondeat superior?*

Appellee PRI also presents the matter on appeal in the form of a single issue:

Did the District Court err in granting summary judgment in favor of PRI where all of Plaintiff's damages were alleged to have arisen out of an automobile accident involving Plaintiff and an employee of PRI, Terry Tebben, who

had, at the time of the accident, "clocked out" at the end of the work day on Friday afternoon and would not return to employment-related activities until the following Monday morning?

## FACTS

[¶ 3]  Tebben was employed by PRI as a health and safety officer. As part of his duties, Tebben was required to purchase parts in Casper and deliver them to PRI's work site. Although Tebben used his personal truck to transport these parts, PRI compensated him by purchasing gasoline, new tires, an engine block, and overloads for the shock absorbers for the vehicle.

[¶ 4]  On Friday, October 21, 1994, just before quitting time at 5:30 p.m., Tebben picked up a list of parts needed for the following Monday. Tebben was specifically instructed to purchase the parts on Monday morning before reporting back to the work site. With the list in hand, Tebben left work for his home in Casper.

[¶ 5]  In order to reach a public highway, PRI employees had to travel on a long, narrow and curvy dirt road. On the day in question, visibility on the road was hindered by glare from the setting sun and dust kicked up by moving vehicles. Traveling ahead of Tebben on the road were PRI employees Eklund and Warren Ash (Ash). Eklund and Ash normally waited until Tebben had left the work site before leaving themselves because they were concerned about Tebben's driving habits. At some point, Ash stopped on the road apparently to determine whether Tebben would take a shortcut or continue along the road. Tebben collided with the Ash vehicle causing physical injury to all three.

[¶ 6]  Two separate litigations arose from the accident. In the first, Ash sued Tebben for his injuries. After an unsuccessful attempt by Tebben to implead PRI as a third-party defendant, Ash filed an amended complaint adding a claim against PRI based on a theory of *respondeat superior*. Ash and PRI apparently reached a settlement, and the district court granted a joint motion to dismiss the complaint against PRI.

[¶ 7]  Subsequently, Eklund filed this action against Tebben and PRI. Eklund claimed Tebben was negligent in driving his vehicle and that PRI was liable for his damages caused by Tebben's actions under the theory of *respondeat superior*. Farmers Insurance Exchange (Farmers), which provided insurance to Eklund through the underinsured motorist coverage of Ash's automobile insurance policy, intervened in the action.

[¶ 8]  PRI and Eklund filed competing motions for summary judgment. PRI argued that Tebben was on his way home at the time of the accident, so there was no genuine issue of material fact as to whether Tebben was acting in the scope of his employment at the time of the accident. Eklund's motion for partial summary judgment was based on the settlement PRI reached with Ash in the first litigation. Eklund contended that by settling in favor of Ash, the question of whether Tebben was acting in the scope of his employment was necessarily decided in the positive and, as a consequence, PRI was precluded from relitigating the issue.

[¶ 9]  On November 23, 1999, the district court denied Eklund's motion for partial summary judgment and granted PRI's motion for summary judgment. The denial of Eklund's motion was predicated on the district court's conclusion that the issue of Tebben's employment status at the time the accident occurred was not necessarily decided in the prior adjudication. The district court granted PRI's motion on the basis that at the time of the accident, Tebben was simply leaving the job site after work and did not have to return with the parts until Monday morning. Therefore, the court concluded that the only reasonable inference that could be drawn from the facts was that Tebben was not acting in the course of his employment when the accident happened. Eklund now appeals.

## STANDARD OF REVIEW

[¶ 10]  Our standard for reviewing a summary judgment is well established:

> Summary judgment is appropriate when no genuine issue as to any material fact

exists and the prevailing party is entitled to have a judgment as a matter of law. *Kahrs v. Board of Trustees for Platte County Sch. Dist. No. 1*, 901 P.2d 404, 406 (Wyo.1995); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which has been asserted by the parties. *Adkins v. Lawson*, 892 P.2d 128, 130 (Wyo.1995). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Jack v. Enterprise Rent-A-Car Co. of Los Angeles*, 899 P.2d 891, 893 (Wyo.1995). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Adkins*, 892 P.2d at 130. We do not accord any deference to the district court's decisions on issues of law. *Kahrs*, 901 P.2d at 406.

The party moving for summary judgment bears the initial burden of establishing a prima facie case for a summary judgment. If the movant carries this burden, the party opposing the summary judgment must come forward with specific facts to demonstrate that a genuine issue of material fact does exist. *Thunder Hawk By and Through Jensen v. Union Pacific R. Co.*, 844 P.2d 1045, 1047 (Wyo. 1992). General allegations and conclusory statements are not sufficient. *Board of County Comm'rs of County of Laramie v. Laramie County Sch. Dist. Number One*, 884 P.2d 946, 956 (Wyo.1994).

*Bachmeier v. Hoffman*, 1 P.3d 1236, 1240 (Wyo.2000).

## DISCUSSION

[¶ 11] Eklund and Farmers argue that the district court erred in concluding that there were no genuine issues of material fact in dispute on whether Tebben was acting in the scope of his employment at the time of the accident. They argue that there is evidence suggesting that Tebben was engaging in a "dual purpose." They note that Tebben had been given a parts list at the end of the work period on Friday and was told to return to the job site on Monday with those parts. In addition, they point out that Tebben was compensated for performing this service through the improvements to his vehicle and the gasoline for which PRI paid. Thus, their position is that Tebben's traveling to Casper was based, at least in part, on a purpose in furtherance of his employer's business.

[¶ 12] Pursuant to the theory of vicarious liability or *respondeat superior*, an employer is liable for the negligent acts of an employee who is acting within the scope of his employment. *Hamilton v. Natrona County Education Association*, 901 P.2d 381, 385 (Wyo.1995); *see also, Miller v. Reiman-Wuerth Company*, 598 P.2d 20, 22–23 (Wyo. 1979); and *Combined Insurance Company of America v. Sinclair*, 584 P.2d 1034, 1041 (Wyo.1978). An employee is acting within the scope of his employment if, at the time of the alleged negligent act or omission, the activity in which he was engaged was: (1) activated in part by a purpose to serve the employer; (2) done with the intention to perform it as a part of or incident to a service on account of which the employee is employed; and (3) performed to further the business interests of the employer in some part. *Beard v. Brown*, 616 P.2d 726, 735 (Wyo.1980). An employee "will be held to be within the scope of his employment when the employee is engaged in an activity which has a multiple purpose, and it is sufficient that one of the purposes is employment-related." *Combined Insurance Company of America*, 584 P.2d at 1041. Whether or not an employee is within the scope of his employment at the time of the accident is ordinarily a factual question for the jury. *Miller*, 598 P.2d at 23; *Combined Insurance Company of America*, 584 P.2d at 1041. It becomes a question of law only when but one reasonable inference can be drawn from the facts. *Hamilton*, 901 P.2d at 385; *Miller*, 598 P.2d at 23.

[¶ 13] The record in this case supports but one reasonable inference: Tebben was not acting within the scope of his employment at the time of the accident. In his

deposition [1], Tebben gave the following testimony:

Q: When you say "we get off," what do you mean?

A: We work ten hours a day, and at 5:30 the day was over unless there was work to be finished up, overtime over the 5:30.

Q: When you say "the day was over," does that mean you're no longer on the clock?

A: Yes.

Q: And when you're no longer on the clock, your time is yours?

A: Yes.

Q: Where were you headed at the time you left the worksite?

A: Home.

Q: What was the name of that worksite?

A: Gas Hills project.

Q: Now, as of 5:31 p.m., could you have gone anywhere in the world you wanted?

A: Yes.

Q: And that would include, assuming finances permit, any destination on the planet?

A: Assuming finances permit.

Q: And there was no one directing your actions or telling you what to do?

A: No.

Q: And did something specific happen at 5:30 p.m.?

A: Yes.

Q: What was that thing that happened?

A: I was called back in to pick up a list of parts that I was requested to bring back out Monday morning with me.

Q: Were you told where to purchase the parts?

A: Yes.

Q: Were you told specifically when to purchase the parts?

A: Monday morning.

Q: And if you had not been given that assignment, would it have been your schedule to return to work Monday morning at the Gas Hills site?

A: Yes.

Q: So by instructing you to purchase parts Monday morning, they were telling you to do a thing that would have been on the clock for you, in any event, regardless of the assignment. Correct?

A: Yes.

Q: They did not expect you—and when we talk about "they," telling you to do this or that, we're talking about your employer?

A: Yes.

Q: And your employer at that time was whom [sic]?

A: PRI.

Q: So PRI told you once you were back on the clock on Monday morning, then after that you would purchase parts to bring back to the worksite. Correct?

A: Yes.

Tebben's uncontradicted testimony is that he was returning home at the time of the accident and that he was specifically instructed to purchase the parts on Monday morning. There is no evidence that, in leaving the job site, Tebben's actions were in any way motivated by a purpose intended to serve his employer. Any links between Tebben leaving the work site on Friday with his employment duty to purchase and deliver parts to the job site on Monday morning are tenuous, at best. The mere fact that PRI previously paid for improvements to Tebben's personal vehicle and that he was given a list of parts on Friday to purchase on Monday is not sufficient to create a link between Tebben's employment and his actions on the day of the accident. *See Beard,* 616 P.2d at 736 ("The mere fact that an employee is remunerated or paid by employers for time traveling to and from work does not place that employee within the "scope of employment" rule in a negligence case."). There is nothing to distinguish Tebben's trip home on Friday after-

noon with any other trip he could have made over the course of the weekend prior to Monday morning. Thus, if one were to accept Eklund's and Farmers' position and take it to its logical extreme, we would have to conclude that at all times during the course of that weekend Tebben would be acting within the scope of his employment. Such a conclusion would distort the concept beyond all reasonable meaning. If the accident had occurred on Monday morning between Tebben's residence and the parts store, then there would be a reasonable inference that Tebben was acting on the behest of his employer. However, that simply is not the factual scenario before us. The only reasonable conclusion to be drawn from the facts of this case is that Tebben was not acting within the scope of his employment at the time of the accident.

[¶ 14] Eklund also contends that PRI is barred by consideration of the doctrines of preclusion from contesting whether Tebben was acting within the scope of his employment. PRI reached a settlement with Ash, the driver of the vehicle in which Eklund was a passenger, in a prior litigation. The court in that matter granted the parties' joint motion to dismiss with prejudice Ash's claims against PRI. Eklund asserts that the settlement in the Ash litigation constitutes a valid, final determination on the merits in which PRI had a full and fair opportunity to litigate all issues. Since Tebben's status as an employee acting within the scope of his employment was a necessary prerequisite to any liability on the part of PRI, Eklund concludes that PRI is precluded from re-arguing the contrary.

[¶ 15] Res judicata and collateral estoppel are related but distinct concepts. Res judicata bars the relitigation of previously litigated *claims* or *causes of action*. *Slavens v. Board of County Commissioners*, 854 P.2d 683, 686 (Wyo.1993). Four factors are examined to determine whether the doctrine of res judicata applies: (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. *Id.*

Collateral estoppel bars relitigation of previously litigated *issues* and involves an analysis of four similar factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

[¶ 16] The proper doctrine for our consideration is collateral estoppel. As noted, res judicata applies to claims or causes of action. The prior adjudication involved a claim by Ash against PRI, while this action concerns a claim by Eklund against PRI. While the two proceedings arose out of the same incident and involve the same defendant, they are clearly separate claims arising out of injuries personal to each plaintiff. The question Eklund has raised relates to the *issue* of whether Tebben was acting within the scope of his employment at the time of his alleged negligent act. Eklund posits that consent decrees, settlements, and voluntary dismissals constitute a "judgment on the merits." Eklund argues that an admission by PRI that Tebben was acting within the scope of his employment is a necessary predicate of the settlement with Ash and, accordingly, PRI is precluded from contesting the issue in this litigation.

[¶ 17] We have considered consent judgments and dismissals with prejudice to be the equivalent of a judgment on the merits for purposes of res judicata. In *CLS v. CLJ*, 693 P.2d 774 (Wyo.1985), the appellant failed to appear at trial, and his suit to establish paternity was dismissed with prejudice pursuant to W.R.C.P. 41(b). A second suit raising the same claim was subsequently filed. We held that the appellant was barred by the doctrine of res judicata from bringing the same claim because an involuntary dismissal under Rule 41(b) operated as an adjudication of the merits. 693 P.2d at 777.

[¶ 18] In *Day v. Davidson*, 951 P.2d 378 (Wyo.1997), Day had filed an action based on

vicarious liability against Pamida, Inc. based on the negligent acts of one of its employees. Day accepted an offer of judgment from Pamida and then subsequently filed an action against the employee based on the negligent act underlying the vicarious liability claim. We held that Day could not bring a subsequent action against the employee based on the fact that, as a vicarious liability situation, the employee was entitled to be credited with the amount of the judgment entered against his employer leaving Day with nothing to recover from the employee. 951 P.2d at 383. While not directly implicating the doctrine of res judicata, *Day*, like *CLS*, concerned the same *claim* brought by the same plaintiff.

[¶ 19] The application of res judicata to those situations where a plaintiff attempts to bring the same claim in a subsequent action against the same or different defendants has a logical basis: It encourages resolution of the plaintiff's claims in a single action, and it forces parties to abide by their agreements. The other cases cited by Eklund in his brief also concern the application of res judicata to consent judgments and settlements. *See, e.g., Jefferson v. Greater Anchorage Area Borough*, 451 P.2d 730 (Alaska 1969); *Clark v. Haas Group, Inc.*, 953 F.2d 1235 (10th Cir.1992); and *In re Vern O. Laing*, 31 F.3d 1050 (10th Cir.1994). We are not, however, dealing with res judicata in this case, but rather, with collateral estoppel.

[¶ 20] We have never addressed the effect of collateral estoppel on settlements or consent judgments. Other authorities have set forth the rule as follows:

> Issue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation.
>
> . . . .
>
> ... In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. ***Thus consent judgments ordinarily support claim preclusion but not issue preclusion.***

18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4443, at 382–85

(1981) (emphasis added). *See also, Linder v. Missoula County*, 251 Mont. 292, 824 P.2d 1004, 1006–07 (1992); and *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 385 (N.D.1992). The logic behind not applying collateral estoppel to settlements and consent judgments absent an expressed intention of the parties to be bound in further proceedings is quite obvious: Application of the doctrine absent an intent to be bound in subsequent proceedings would act as a deterrent to voluntary settlements. If, by settling one lawsuit, a party forsakes the right to challenge all issues at stake in any future litigation, then the incentive to settle short of trial is reduced.

[¶ 21] Turning to the case before us, we conclude that there is no evidence that PRI intended to be foreclosed from contesting any issue before the court in the Ash litigation in any subsequent proceedings. The record before us simply consists of a stipulated motion to dismiss with prejudice and the order signed by the district court granting the motion. There is nothing in the motion or order suggesting that PRI was foregoing its right to contest the issue of whether Tebben was acting in the course of his employment in any other proceedings. Absent such evidence, we conclude that the district court was correct in not applying the doctrine of collateral estoppel in this case.

## CONCLUSION

[¶ 22] Under the facts of this case, the only reasonable inference to be drawn is that Tebben was not acting within the scope of his employment at the time of the accident. Therefore, the district court did not err in granting PRI's motion for summary judgment. Nor did the court err in denying Eklund's claim that PRI was precluded from contesting the issue of Tebben's employment status because the doctrine of collateral estoppel was not applicable without evidence that PRI intended to be bound on the issue through its settlement in a prior adjudication.

[¶ 23] Affirmed.